IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GUSTAVO RODRIGUES PEREIRA,**<br><br>Plaintiff,<br><br>v.<br><br>**DAVID O'NEILL,** *Acting Field Office Director of Enforcement and Removal Operations, Philadelphia Field Office, Immigration and Customs Enforcement*, et al.,<br><br>Defendants. | CIVIL ACTION<br><br>No. 25-6543-KSM |

<u>**MEMORANDUM**</u>

**MARSTON, J.**                                                                                                          **December 8, 2025**

      This case is the most recent iteration in what is becoming an all too familiar refrain in immigration jurisprudence.  Brazilian citizen Gustavo Rodrigues Pereira entered the United States from Mexico without inspection on May 18, 2022.  (Doc. No. 1 at 1, 4.)  After crossing the border, he was quickly apprehended by U.S. Customs and Border Protection ("CBP") and detained for around 24 hours before being released from custody and served with a Notice to Appear in Immigration Court, which charged him with having entered the United States without admission or inspection in violation of 8 U.S.C. § 1182(a)(6)(A)(i).  (*Id.* at 1.)  Although the Notice to Appear set Rodrigues Pereira's initial hearing date as August 30, 2022 (Doc. No. 1-1 at 2), his removal proceedings remain pending as of the date of this Memorandum (Doc. No. 8 at 3; Doc. No. 9 at 2).[1]  While awaiting final adjudication of his removal proceedings, Rodrigues

---

[1] It is not unusual for noncitizens to be released on their own recognizance, subject to periodic check ins, during removal proceedings—proceedings which often last many years.  *See, e.g.*, *Kashranov v. Jamison*, No. 25-cv-5555, 2025 WL 3188399, at *2 (E.D. Pa. Nov. 14, 2025) (notice to appear entered on December 5, 2023, with initial appearance date set for May 21, 2025, and plaintiff released on own recognizance with periodic check ins in the interim).

Pereira has remained in the United States. (Doc. No. 1 at 2.) During that time, he has not committed any crimes, and he has complied with all directions from immigration authorities. (Doc. No. 9 at 20.)

On November 17, 2025, at his annual check in, he was arrested by Immigration and Customs Enforcement ("ICE") officials pursuant to a June 8, 2025 Department of Homeland Security ("DHS") policy instructing all ICE employees to consider anyone inadmissible under § 1182(a)(6)(A)(i) subject to detention without eligibility for bond, regardless of whether they are attempting to enter the country or have been present for years. (Doc. No. 1 at 2.) Rodrigues Pereira, who is currently detained at the Federal Detention Center ("FDC") in Philadelphia, now seeks a writ of habeas corpus on the grounds that his detention is contrary to federal law. (*See generally id.*) The Government[2] oppose the Petition. (Doc. No. 8.) For the reasons discussed below, this Court joins the hundreds of other courts that have found DHS's mandatory detention policy violates the Due Process Clause of the Fifth Amendment and the Federal Immigration and Nationality Act ("INA") in the context presented here.

## I.     BACKGROUND

An overview of the INA and the Government's interpretation of the Act is helpful for understanding the sequence of events that led to Rodrigues Pereira's current incarceration.

### A.     Overview of the INA

This case centers on two sections of the INA, 8 U.S.C. §§ 1225 and 1226. Section 1225 governs the inspection of "applicants for admission," a phrase broadly defined as any noncitizen

---

[2] Rodrigues Pereira names four government officials as respondents: (1) David O'Neill, Acting Field Office Director of Enforcement and Removal Operations for ICE's Philadelphia Field Office; (2) Kristi Noem, Secretary of DHS; (3) Pamela Bondi, United States Attorney General; and (4) Jamal L. Jamison, Warden of the FDC (collectively, the "Government" or "Government Respondents"). (Doc. No. 1 at 1.)

who is "present in the United States who has not been admitted or who arrives in the United States." *See id.* § 1225(a)(1), (b)(1), (b)(2). Section 1225(b) divides applicants into two categories. *Id.* § 1225(b). First, § 1225(b)(1) provides for the inspection of aliens "arriving in the United States and certain other aliens who have not been admitted or paroled." *Id.* § 1225(b)(1). And § 1225(b)(2) governs the "[i]nspection of other aliens," stating that "[i]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" pending a removal proceeding. *Id.* § 1225(b)(2)(A).

Section 1226 similarly authorizes the detention of noncitizens "pending a decision on whether the alien is to be removed from the United States." *Id.* § 1226(a). But unlike a noncitizen detained under § 1225, a noncitizen detained under § 1226 may be released while they await a decision on removal. *Id.* (granting the Attorney General discretion to either detain the noncitizen *or* to release the noncitizen on bond or conditional parole). Immigration authorities are tasked with the "initial custody determination, after which the noncitizen may request a bond hearing before an immigration judge." *Kashranov*, 2025 WL 3188399, at *1 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)). "At the hearing, the noncitizen 'may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community.'" *Id.* (quoting *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019)). If released, the bond remains subject to revocation. *See* 8 U.S.C. § 1226(b) (providing that the Attorney General may "at any time revoke" the noncitizen's "bond or parole . . . , rearrest the alien under the original warrant, and detain" them).

When §§ 1225 and 1226 were enacted in 1996, the Executive Office for Immigration Review ("EOIR")—the subdivision of the Department of Justice ("DOJ") that oversees the

immigration courts—took the position that noncitizens who enter the country *without inspection*, and thus, are already present in the country when arrested, are detained under § 1226, not § 1225(b)(2), and are therefore, eligible for bond. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 63 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."); *Ndiaye v. Jamison*, No. 25-cv-6007, 2025 WL 3229307, at *1 (E.D. Pa. Nov. 19, 2025) ("Since [§ 1225(b)(2) first took effect in 1997] the Government's immigration enforcement practices have been to detain noncitizens who have been residing in the United States under § 1226, entitling them to a bond hearing.").

    Nearly 30 years later, however, DHS took a different stance. On July 8, 2025, DHS, in coordination with DOJ, "revisited its legal position on detention and release authorities," and determined that § 1225(b)(2), not § 1226, is "the applicable immigration detention authority for all applicants for admission," regardless of whether they are appearing for inspection or have been present in the United States for years. *See* ICE, Interim Guidance Regarding Detention Authority for Applicants for Admission (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited Dec. 1, 2025). In this recent guidance, DHS states that "[e]ffective immediately," all such noncitizens are "subject to detention" under § 1225(b)(2), are "ineligible for a custody redetermination hearing ('bond hearing') before an immigration judge," and "may not be released for the duration of their removal proceedings absent a parole by DHS." *Id.* In other words, it is DHS's current position that noncitizens present in the United States and awaiting removal proceedings

4

will be "treated in the same manner that 'arriving aliens' have historically been treated." *Id.*; *accord* Rodney S. Scott, Commissioner, CBP, Detention of Applicants for Admission at 1 (July 10, 2025), https://www.cbp.gov/sites/default/files/2025-09/intc-46100_-_c1_signed_memo_-_07.10.2025.pdf (last visited Dec. 1, 2025).

On September 5, 2025, the Board of Immigration Appeals ("BIA"), the appellate body of the immigration courts, issued a precedential decision adopting a similarly broad reading of § 1225(b)(2) and holding that an immigration judge has no authority to consider a bond request from any individual who entered the United States without admission. *See In re Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025). The BIA concluded that such individuals are subject to detention under § 1225(b)(2), and therefore, are not eligible to be released on bond. *Id.* The *Yajure Hurtado* decision is binding on all immigration judges.

### B. Rodrigues Pereira's Detention

As noted above, Rodrigues Pereira entered the United States from Mexico without inspection on May 18, 2022. (Doc. No. 1 at 1.) After crossing the border, he was apprehended and detained by CBP before being released from custody and served with a Notice to Appear in Immigration Court. (*Id.* at 1.) His removal proceedings remain pending as of the writing of this Memorandum. (Doc. No. 8 at 3; Doc. No. 9 at 2.) On November 17, 2025, at his annual check in, he was arrested by ICE officials and detained at the FDC. (Doc. No. 1 at 2–3.) He has no criminal history, and no bond hearing was held to determine whether he poses a flight risk or a danger to the community. (Doc. No. 9 at 2.)

Two days after his arrest, Rodrigues Pereira filed an emergency petition seeking a writ of habeas corpus on the grounds that his detention is contrary to federal law. (*See generally* Doc. No. 1.) He also sought an order preventing his transfer outside of the Eastern District of Pennsylvania while his habeas petition is pending. (*Id.* at 13–14.) The next day, this Court,

finding the Petition "raises substantive issues that may have merit," enjoined the Government Respondents from "taking any action that would result in the removal of [Rodrigues Pereira] from within the boundaries of the Eastern District of Pennsylvania, pending further Order of this Court." (Doc. No. 3.)

The Court held a status conference on November 21, 2025, and later that day, entered an Order directing the Government to answer the Petition by November 25, 2025, and Rodrigues Pereira to submit a reply, if any, by November 28, 2025. (Doc. No. 7.) The parties have complied with that Order. (*See* Doc. Nos. 8, 9.) As all counsel agree that the Court can decide the issues raised in the Petition on the papers and without a hearing, the matter is now fully briefed and ripe for resolution.

## II.    LEGAL STANDARD

Rodrigues Pereira seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Under that provision, a federal district court is authorized to grant a writ of habeas corpus to a petitioner who is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). The petitioner carries the burden of showing his detention violates the Constitution or federal law. *Id.* § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## III.    DISCUSSION

Rodrigues Pereira argues that his detention violates the INA, the Act's implementing regulations, and the Due Process Clause of the Fifth Amendment. (Doc. No. 1 at 10–13.) The Government responds that the Court should deny habeas relief because: (1) the Court lacks jurisdiction to intervene in Rodrigues Pereira's removal proceedings, (2) Rodrigues Pereira has not exhausted administrative remedies, (3) Rodrigues Pereira is lawfully detained pursuant to

§ 1225(b)(2), and (4) his detention does not offend due process.  The Court addresses each issue in turn.

### A. Jurisdiction

"Federal courts are courts of limited jurisdiction," having only "that power authorized by Constitution and statute."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  As relevant here, § 2241 authorizes federal district courts to grant writs of habeas corpus, thus, giving the Court jurisdiction to consider Rodrigues Pereira's Petition.  28 U.S.C. § 2241(c).  However, the INA limits the Court's jurisdiction over certain immigration matters.  Here, the Government argues that three provisions—8 U.S.C. § 1252(a), (b)(9), and (g)—strip the Court of jurisdiction in this case.  (*See* Doc. No. 8 at 5–6.)  The Court considers each in turn.

#### 1. Section 1252(a)

First, the Government argues that the Court lacks jurisdiction to consider the Petition because § 1252(a)(2)(B)(ii) "shields from judicial review discretionary decisions, such as charge determinations regarding inadmissibility."  (Doc. No. 8 at 10.)  Section 1252(a)(2)(B)(ii) states that "[n]otwithstanding any other provision of law . . . , including section 2241 of Title 28, or any other habeas corpus provision . . . , no court shall have jurisdiction to review . . . any . . . decision or action of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General . . . ."  8 U.S.C. § 1252(a)(2)(B)(ii).  But Rodrigues Pereira does not challenge the Government's decision to bring charges of inadmissibility against him, nor does he challenge the Government's "decision to detain him during removal proceedings."  (Doc. No. 9 at 6.)  Instead, he challenges the Government's decision to detain him *pursuant to § 1225(b)(2)* and thereby, deny him a bond hearing.  (*Id.*)  These are not matters of discretion.  *See Kashranov*, 2025 WL 3188399, at *4 ("The petition does not challenge a discretionary choice to detain Mr. Kashranov.  Instead, there's a pure legal question about which

7

section governs. If it's 1225(b), then detention is mandatory. No discretion. If it's 1226, then due process protections apply, and a bond hearing is mandatory. No discretion. Either way, the dispute is about the scope of the Government's statutory detention authority, which, as the Supreme Court has made clear, is 'not a matter of discretion.'" (citing *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001))). Accordingly, § 1252(a) does not strip the Court of jurisdiction.

### 2. Section 1252(b)(9)

Second, the Government looks to § 1252(b)(9), which provides, "no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision" to review "questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States," unless review is sought of a final order. 8 U.S.C. § 1252(b)(9). The Government argues that this section strips the Court of jurisdiction because Rodrigues Pereira "challenges the government's interpretation of a statutory provision arising from actions taken to remove him from the United States." (Doc. No. 8 at 7.) The Court disagrees.

The plurality's opinion in *Jennings v. Rodriguez* is instructive. *See* 583 U.S. 281, 294–95 (2018). *Jennings* involved a class action challenging the detention provisions in §§ 1225 and 1226. *Id.* at 287–89. The class argued that both provisions violate the Due Process Clause of the Fifth Amendment to the extent they authorize prolonged detention without a bond hearing. *Id.* at 291; *see also id.* at 292 ("We are required in this case to decide 'questions of law,' specifically, whether . . . certain statutory provisions require detention without a bond hearing."). Before turning to that issue, however, Justice Alito, writing for himself and two others, considered whether § 1252(b)(9) stripped the Court of jurisdiction. *Id.* at 292. Justice Alito reasoned that because the class was not challenging "an order of removal," a "decision to detain [the noncitizen] in the first place or to seek removal," or "the process by which [a noncitizen's]

8

removability will be determined," § 1252(b)(9) did "not present a jurisdictional bar" to the Court's consideration of whether §§ 1225 and 1226 require detention without a bond hearing. *Id.* at 294.  Here, Rodrigues Pereira presents a nearly identical question to the one faced in *Jennings*:  Can the Government detain him pursuant to § 1225(b)(2) and deny him a bond hearing?  *See id.*; *Kashranov*, 2025 WL 3188399, at *3–4 (citing *Jennings* with approval and concluding that the text of "Section 1252(b)(9) makes clear that the provision does not apply here.  Mr. Kashranov is not asking the Court to review a question of law or fact arising from any removal proceedings.  He challenges the Government's interpretation of the statutory detention framework mandating his detention without a bond hearing").

The Third Circuit's opinion in *E.O.H.C. v. Secretary, U.S. Department of Homeland Security*, is also instructive.  950 F.3d 177 (3d Cir. 2020).  In *E.O.H.C.*, the court cited the plurality's discussion in *Jennings* with approval, "distill[ing]" that discussion to "a simple principle"—§ 1252(b)(9) does "not strip jurisdiction when aliens seek relief that courts cannot meaningfully provide alongside review of a final order of removal." *Id.* at 185–86.  Rodrigues Pereira's case also falls squarely within *E.O.H.C.*'s now-or-never category.  Indeed, his request for a bond hearing will be moot at the conclusion of his removal proceedings.  *See, e.g.*, *id.* at 186 ("[T]ake *Jennings*'s example of a challenge to prolonged detention.  Under the Government's reading, these aliens could get no judicial review until the Board enters their final orders of removal.  This cannot be so."); *Demirel v. Fed. Det. Ctr. Phila.*, No. 25-cv-5488, 2025 WL 3218243, at *3 (E.D. Pa. Nov. 18, 2025) ("Later is not an option here, because the Court of Appeals could not 'meaningfully' redress Demirel's purportedly unlawful denial of release on bond should his final removal be ordered.").

Accordingly, the Court finds § 1252(b)(9) does not strip jurisdiction.

### 3. Section 1252(g)

Last, the Government looks to 8 U.S.C. § 1252(g). (Doc. No. 8 at 6.) Section 1252(g) states that "notwithstanding any other provision of law . . . . , including section 2241 of Title 28, or any other habeas corpus provision . . . , no court shall have jurisdiction to hear any clause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." The Government reasons that because Rodrigues Pereira challenges the Government's "decision to detain him pursuant to § 1225(b)(2), as opposed to § 1226(a)," his claims "arise 'from the decision or action by the Attorney General . . . to commence proceedings and adjudicate cases.'" (Doc. No. 8 at 6 (quoting 8 U.S.C. § 1252(g))). Not so.

As the Court noted above, Rodrigues Pereira does not challenge the Attorney General's authority to *commence* or *adjudicate* his removal proceedings—proceedings which have been ongoing for years. The Government argues without meaningful discussion that the "decision to detain is a 'specification of the decision to commence proceedings.'" (Doc. No. 8 at 6 (quoting *Reno v. Am.-Arab Anti-Discrimination Committee ("AADC")*, 525 U.S. 471, 474, 485 n.9 (1999)).) But nothing in *AADC* supports this argument. To the contrary, the *AADC* Court narrowly read § 1252(g), finding it "applies only to the three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders'" and not to the "many other decisions or actions that may be part of the deportation process." 525 U.S. at 482 (quoting 8 U.S.C. § 1252(g)); *see also, e.g.*, *Demirel*, 2025 WL 3218243, at *3 ("Demirel seeks a bond hearing; he does not challenge the commencement, adjudication, or execution of his removal (which may not even occur). The Government's contention that his claims 'arise from' the commencement of removal proceedings is thus incorrect." (internal citations omitted)); *Kashranov*, 2025 WL 3188399, at *3 ("Mr.

10

Kashranov does not challenge the commencement of removal proceedings, the Attorney General's decision to adjudicate his case, or the execution of a removal order. Instead, he contests the Government's legal authority to detain him under Section 1225(b)(2). Section 1252(g) does not apply to such a claim and therefore does not strip the Court of jurisdiction to hear this case."); *Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025 WL 3171639, at *1 (E.D. Pa. Nov. 13, 2025) ("First, 8 U.S.C. § 1252(b)(9) does not bar this Court from reviewing whether a bond hearing is required prior to detention because that issue is collateral to the removal process. . . . 8 U.S.C. § 1252(g) also does not bar jurisdiction for similar reasons.").

\* \* \*

No provision in § 1252 strips the Court of jurisdiction to consider Rodrigues Pereira's Petition.

### B. Exhaustion

Next, the Government argues that the Court should deny Rodrigues Pereira's Petition because he has not exhausted administrative remedies. (Doc. No. 8 at 10–12.) Despite conceding that immigration judges are bound by the BIA's holding in *Yajure Hurtado*—and therefore, *must* deny requests for bond hearings from detainees like Rodrigues Pereira—the Government asserts that it would not be futile for Rodrigues Pereira to request a bond hearing before an immigration judge and appeal the inevitable denial to the BIA before seeking review in federal court. (*Id.*) This argument is nonsensical.

This Court joins the overwhelming number of courts who have waived the exhaustion requirement as futile in identical circumstances. *See, e.g.*, *Demirel*, 2025 WL 3218243, at *4 (finding "exhaustion is not required" because the "BIA has 'predetermined the statutory issue,'" and therefore, "Demirel has 'no reasonable aspect of obtaining relief' through administrative remedies" (quoting *Corona Diaz v. Olson*, No. 25cv12141, 2025 WL 3022170, at *3 (N.D. Ill.

11

Oct. 29, 2025))); *Kashranov*, 2025 WL 3188399, at *4 (excusing the exhaustion requirement for the petitioner because "[r]equiring Mr. Kashranov to pursue further administrative review would serve no practical purpose considering the BIA's recent decision in [*Yajure Hurtado*]"); *Cantu-Cortes*, 2025 WL 3171639, at *1 ("Petitioner is not required to exhaust his administrative remedies, as exhaustion would be futile. Here, the Board of Immigration Appeals would be bound by its own precedent to determine that Petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2)." (internal citations omitted)).

      **C.**    **Merits**

That brings us to the merits of Rodrigues Pereira's Petition. He argues that his continued detention without a bond hearing is contrary to federal law in that it violates the INA, the Act's implementing regulations, and the Fifth Amendment of the Federal Constitution. (Doc. No. 1 at 10–13.) Because the Court agrees that Rodrigues Pereira's detention violates the INA and his rights under the Due Process Clause of the Fifth Amendment, the Court need not consider whether it also violates the INA's implementing regulations.

Rodrigues Pereira contends that the "mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not . . . apply to [noncitizens] who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings." (Doc. No. 1 at 11.) Rodrigues Pereira reasons that instead, "[s]uch noncitizens are detained under § 1226(a)" unless other, more specific detention provisions (not relevant here) are triggered. (*Id.*) As a court in this District recently noted, Rodrigues Pereira's position is consistent with the opinions of nearly all of the approximately *300* district courts to consider the issue. *See Demirel*, 2025 WL 3218243, at *4 ("Once again of the 288 district court decisions to address the issue, 282 have determined that § 1226(a) applies or likely applies in situations similar to those presented here. Those decisions are plainly correct." (internal citations

12

omitted)).  In *Demirel* and similar cases, the courts looked to the language of § 1225(b)(2), which requires detention "of an alien who is an applicant for admission" unless "the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted."  *Id.* (emphasis added); *Kashranov*, 2025 WL 3188399, at *6 ("Section 1225(b)(2)(A) applies only to an alien who is *both* an applicant for admission and 'seeking admission.'").  When an applicant for admission is apprehended after being present in the United States for years, they are not "actively 'seeking admission'" at the time of their arrest, so § 1225(b)(2) does not govern their detention.  *Demirel*, 2025 WL 3218243, at *4; *see also, e.g.*, *Kashranov*, 2025 WL 3188399, at *6 (considering structure of § 1225(b)(2) and the definition of "seeking" and concluding that "'seeking admission' describes active and ongoing conduct— physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization"); *Cantu-Cortes*, 2025 WL 3171639, at *2 ("A noncitizen like petitioner, who has already entered and is present in the country, simply cannot be characterized as seeking entry consistent with the ordinary meaning of that phrase." (quotation marks and citations omitted)).

The Government disagrees with this interpretation, arguing that noncitizens like Rodrigues Pereira "fall[ ] squarely within the ambit of § 1225(b)(2)(A)'s mandatory detention requirement" because they are "'applicant[s] for admission' to the United States" and *every* "applicant for admission" is necessarily "seeking admission." (Doc. No. 8 at 18–19.)  But if that were the case, "then there was no need for Congress to limit the statute's application to 'alien[s] seeking admission.'"  *Demirel*, 2025 WL 3218243, at *4.  The Government would essentially have this Court rewrite § 1225(b)(2) to say:

> in the case of an alien who is an applicant for admission, if the examining immigration officer determines that ~~an alien seeking~~

13

>    ~~admission~~ [the applicant] is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

But this Court may not read the statute in a way that would render certain words superfluous. *See United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning."); *Corley v. United States*, 556 U.S. 303 (2009) ("[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (quotation marks omitted)); *see also, e.g.*, *Demirel*, 2025 WL 3218243, at *4 ("If, as the Government argues, § 1225(b) applies to all 'applicants for admission,' then there was no need for Congress to limit the statute's application to 'aliens seeking admission.' I am not prepared to read this part of § 1225(b) out of existence. Yet, that is what the Government asks me to do." (internal citations omitted)); *Kashranov*, 2025 WL 3188399, at *7 ("If the Government were correct, and 'applicant for admission' and 'seeking admission' were truly interchangeable, Congress would have had no reason to use two distinct terms. Treating the phrases as identical would render one entirely meaningless. That is the very definition of surplusage.").

The statutory context of § 1225(b)(2) reinforces the Court's finding that "seeking admission" refers to an applicant actively seeking entry at the time of their arrest. Notably, that section is titled, "*Inspection* of other aliens." 8 U.S.C. § 1225(b)(2) (emphasis added). In the immigration context, the term "inspection" refers to "a process that occurs when an individual presents for entry into the United States." *Kashranov*, 2025 WL 3188399, at *7 (citing 8 C.F.R. § 235.1); *see also* 8 C.F.R. § 235.1(a) (describing the "scope of examination" for the "inspection of persons applying for admission" and stating, "[a]pplication to lawfully *enter* the United States shall be made in person to an immigration officer *at a U.S. port-of-entry* when the port is open for inspection, or as otherwise designated in this section" (emphases added)). In addition, the

14

two provisions immediately following § 1225(b)(2)(A)'s mandatory detention provision involve scenarios that would occur only when a noncitizen is actively attempting to enter the country as opposed to already present here and in the midst of removal proceedings.  *See* 8 U.S.C. § 1225(b)(2)(B) (providing that the mandatory detention provision does not apply to a noncitizen who is "a crewman," or "a stowaway"); *id.* § 1225(b)(2)(C) (providing that a noncitizen subject to mandatory detention "who is arriving on land . . . from a foreign territory contiguous to the United States, the Attorney General may return the alien to that territory" pending removal proceedings).

With this interpretation in mind, the Court finds § 1225(b)(2) does not govern Rodrigues Pereira's detention.  At the time of his arrest, Rodrigues Pereira had been present in the United States for years and was not actively "seeking admission."  Instead, his detention is governed by § 1226, which "grants the Attorney General discretion to detain or release a noncitizen on bond while removal proceedings are pending." *Kashranov*, 2025 WL 3188399, at *5.  "When the Government detains an alien under Section 1226, the alien has due process rights, including a right to an individualized detention and a bond hearing." *Id.*; *see also, e.g., e.g., Patel v. McShane*, No. 25-cv-5975, 2025 WL 3241212, at *2 (E.D. Pa. Nov. 20, 2025) ("This statute entitled detained individuals to a bond hearing before an Immigration Judge." (citing 8 C.F.R. § 1236.1(c)(8), (d)); *Ndiaye v. Jamison*, No. 25-cv-6007, 2025 WL 3229307, at *1 (E.D. Pa. Nov. 19, 2025) ("[D]ue process and proper statutory interpretation of the INA preclude Ndiaye from being mandatorily detained without bond under § 1225(b)(2) . . . ."); *Demirel*, 2025 WL 3218243, at *5 ("In these circumstances, the law is clear: the Government detained Demirel pursuant to § 1226(A), which allows him to seek bond a [sic] hearing before an IJ."); *Cantu-Cortes*, 2025 WL 3171639, at *2 ("ICE's mandatory detention of Petitioner under 8 U.S.C.

§ 1225(b)(2)(A) violates the laws of the United States and Petitioner's rights under the Due Process Clause."). Because Rodrigues Pereira has not been afforded those rights here, his current detention is unlawful.

## IV. CONCLUSION

Because ICE's detention of Rodrigues Pereira without a bond hearing is "in violation of the Constitution or laws or treaties of the United States," habeas relief is warranted. 28 U.S.C. § 2241(c)(1), (3); *see also, e.g.*, *Kashranov*, 2025 WL 3188399, at *8. Like Judges Wolson and Brody did in similar cases, the Court will order the release of Rodrigues Pereira because he was unlawfully detained. *See Kashranov*, 2025 WL 3188399, at *8; *Patel*, 2025 WL 3241212, at *3. The Government is permanently enjoined from re-detaining Rodrigues Pereira under § 1225(b)(2)(A). The Government is also temporarily enjoined from re-arresting him under § 1226(a) for seven days following his release to ensure the habeas remedy is effective. If, after seven days, the Government detains Rodrigues Pereira under § 1226(a), the Government must provide him with notice and an opportunity to be heard at a bond hearing before an immigration judge, who will assess whether he poses a flight risk or a danger to the community. An appropriate order follows.